UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

**GATEHOUSE MEDIA MASSACHUSETTS I, INC.**, DOING BUSINESS AS GATEHOUSE MEDIA NEW ENGLAND,

        *Plaintiff,*

    -*against*-

**THE NEW YORK TIMES CO.**, DOING BUSINESS AS BOSTON.COM,

        *Defendant.*

**COMPLAINT**

**C.A. No. ____**

**JURY TRIAL DEMANDED**

---

Plaintiff GateHouse Media Massachusetts I, Inc., doing business as GateHouse Media New England ("GateHouse"), by its attorneys, Hiscock & Barclay, LLP, as and for its Complaint against defendant The New York Times Company, doing business as Boston.com ("NYT"), alleges as follows:

### NATURE OF THE ACTION

1.    Plaintiff is the publisher of, *inter alia*, the *Newton TAB*, a free weekly newspaper covering newsworthy events in the City of Newton, Massachusetts and environs, and the *Daily News Tribune*, a paid daily newspaper covering newsworthy events in the City of Waltham, Massachusetts and environs (*Newton TAB* and *Daily News Tribune* are sometimes collectively referred to herein as the "Newspapers"). Plaintiff also owns and operates the Newspapers'    corresponding    online    (*i.e.*, Internet-based) editions, http://www.wickedlocal.com/newton ("*Wicked Local*"), and http://www.dailynewstribune.com. Plaintiff holds valid copyright interests in the articles and other original content appearing in both the print and online editions of the Newspapers, as well as federal and/or common law trademark rights in their respective names *Newton TAB* and *Daily News Tribune*, and in the mark

"*Wicked Local.*" Plaintiff seeks immediate injunctive relief to put a halt to the blatant, willful and significant infringement engaged in by defendant on its competing website - http://boston.com/yourtown/newton (the "Infringing Website" or "Site").

2.      Defendant is reproducing, displaying and distributing on the Infringing Website unauthorized verbatim copies of newspaper article headlines and the first sentences thereof (the "ledes"), as first published by plaintiff in the Newspapers or their corresponding online editions, including the community-based online forum known as *Newton TAB* Blog (http://www.blogs.townonline.com/newton). Defendant is also reproducing, displaying and distributing on the Site additional original material published on Plaintiff's *Wicked Local* website. Defendant is offering plaintiff's copyrighted material on the Infringing Website without plaintiff's express or implied permission, in violation of the United States copyright and trademark laws.

3.      Defendant is also infringing upon GateHouse's trademark rights by using the *Newton TAB, Daily News Tribune* and *Wicked Local* marks in connection with the Infringing Website, thereby causing confusion and mistake among users of the Infringing Website as to the source of origin and endorsement of the content posted there, in violation of Sections 43(a) and 43(c) of the Lanham Act as well as Massachusetts statutory and common-law of trademark infringement and unfair competition.

4.      Among other remedies, plaintiff seeks to enjoin and restrain defendant from (1) reproducing, uploading, posting, displaying, or distributing plaintiff's copyrighted content; and (2) using plaintiff's marks *Newton TAB* and/or *Daily News Tribune* and/or *Wicked Local* in a manner that falsely states or implies that plaintiff has authorized, licensed or endorsed defendant,

its Site and/or its complained of actions, and/or which confuses the public as to the source of origin of the materials posted at the Infringing Website.

5.     This is an action for (i) direct copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 101 and 501, *et seq.*; (ii) false designation of source of origin, trademark infringement, and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a); (iii) trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c); (iv) unfair competition and unfair business practices under Massachusetts Gen. Laws chs. 93A and 110H and the common law of the Commonwealth of Massachusetts; and (iv) breach of contract.

## PARTIES

6.     GateHouse is a Delaware corporation, duly registered to do business in the Commonwealth of Massachusetts, with its principal place of business at 350 Willowbrook Office Park, Fairport, New York 14450.   GateHouse is a wholly-owned subsidiary of GateHouse Media, Inc., a Delaware corporation with the same principal place of business.   By Release, Quitclaim and Assignment executed on December 18, 2008, GateHouse Media, Inc., released, forever quitclaimed and assigned to GateHouse any and all right, title and interest it may have had and/or may have in and to any copyrights in articles, photographs, compilations, or other copyrighted materials and works in or on *Newton TAB*, *Daily News Tribune*, and wickedlocal.com/newton.   By Release, Quitclaim and Assignment executed on December 20, 2008, Enterprise News Media, LLC., released, forever quitclaimed and assigned to GateHouse any and all right, title and interest it may have had and/or may have in and to the mark *Wicked Local*, and any copyrights in articles, photographs, compilations, or other copyrighted materials and works in or on www.wickedlocal.com/newton.

7.     NYT is a New York corporation, duly registered to do business in the State of Massachusetts, with its principal place of business at 620 Eighth Avenue, New York, New York 10018.  Upon information and belief, NYT owns and operates the Infringing Website, a portion of which constitutes the online edition of another of defendant's media properties, *The Boston Globe*, a daily and Sunday newspaper of widespread circulation in the City of Boston, Massachusetts and environs.

## JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction pursuant to (i) 28 U.S.C. 1331; (ii) 28 U.S.C. 1332, in that this is an action between citizens of different states and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs; (c) 28 U.S.C. 1338; and (iv) 28 U.S.C. 1367.

9.     The Court has personal jurisdiction over defendant NYT pursuant to *Fed. R. Civ. P.* 4(k) and Massachusetts Gen. Laws ch. 223A, § 3, in that defendant provides and transmits, and/or offers to provide and transmit, the infringing news service to viewers and potential viewers and to Internet websites that are run on computer servers located in Massachusetts, and causes copyrighted content and works to be reproduced, displayed and distributed within Massachusetts in violation of GateHouse's rights, as set forth *infra*.  Defendant NYT (i) regularly does or solicits business in Massachusetts and derives significant revenue from services rendered by or on its behalf in Massachusetts, or (b) expects or reasonably should expect its acts to have consequences in Massachusetts and derives substantial revenue from interstate or international commerce, including, upon information and belief, from the Infringing Website.

10.     Venue is proper in the United States District Court for the District of Massachusetts under 28 U.S.C. 1391(a)(2) because a substantial part of the events or omissions giving rise to plaintiff's claims occurred here, and under 28 U.S.C. 1400.

11.     This is a case or controversy between the parties that exists within the jurisdiction

of this Court. Therefore, this Court is authorized to grant plaintiff the preliminary and permanent

injunctive relief it has requested here pursuant to Rule 65 of the *Fed. R. Civ. P.*

## FACTUAL ALLEGATIONS

### A.     The Business of GateHouse and Functionality of www.wickedlocal.com/newton.

12.     GateHouse is among the preeminent providers of local content and local

advertising in the small and medium media markets which are its exclusive focus. GateHouse's

newspapers and websites attempt to fill the niche left by the larger metropolitan daily

newspapers, such as *The Boston Globe*, that generally focus their print and corresponding online

editions on newsworthy matters of regional, national or global concern.

13.     In the Commonwealth of Massachusetts, GateHouse publishes eight (8) locally

focused daily newspapers, including the *Daily News Tribune* at issue here, thirty-one (31) free

locally focused weekly newspapers, including the *Newton TAB* at issue here, and eighty-six (86)

paid locally focused weekly newspapers.

14.     In or about 1996, GateHouse's predecessor launched the Internet website

www.wickedlocal.com,     which     transformed     a     series     of     previously     disparate

"TownOnline" websites into a network of "hyper-local" community websites, each of which

may     be     accessed through     plaintiff's     *Wicked     Local*     Internet     portal.     The     website

http://www.wickedlocal.com/newton, for example, collects and displays original content from

*Newton TAB*, *Newton TAB* Blog and the *Daily News Tribune*, among other sources, thus

allowing users to browse online the articles published in the print editions of the Newspapers,

and more, as well as the local advertising found therein.

15.     Beyond merely offering a passive news experience, http://www.wickedlocal.com (and its sister site *Newton TAB* Blog) is interactive -- users can read the local news, post comments on it, and discuss the news with other citizens in a virtual setting designed to replicate a "Town Hall"-type meeting.

16.     Upon information and belief, when GateHouse launched *Wicked Local*, and continuing until on or about November of 2008, defendant was not offering any directly competing online hyper-local news service in the Commonwealth of Massachusetts.

17.     GateHouse invests vast resources, including substantial amounts of time, money, effort, talent and creativity, in gathering local news from communities located in the Commonwealth of Massachusetts such as the cities of Newton and Waltham, and creating original reports and accounts of that local news, which it publishes in the print and online editions of the *Newton TAB* and *Daily News Tribune* and which its readers comment upon at *Newton TAB* Blog. GateHouse's on-line journalists must travel quickly to the place where local news is expected to happen, including town board meetings, high school sports events, and mayoral and police press conferences, and be equipped to record and transmit their original material immediately to GateHouse's editors.

18.     GateHouse's editorial staff, working with its reporters, then select and organize the factual information and develop it around various themes to present a topical, coherent and informative story that will attract and inform readers.  In order to maximize reader interest in any given story, GateHouse's editorial staff extracts certain distinctive features from the story, from which they prepare the headlines and ledes.

19.     Plaintiff's website http://www.wickedlocal.com/newton, which has come to be known by the public by its registered trademark, *Wicked Local*, is designed such that the user is

presented with a list of the headlines and ledes from articles recently published in the print editions of the Newspapers, as well as in the *Newton TAB* Blog, among other original content. A user merely clicks a computer's mouse pointer on the headline or blog title (a/k/a "hotlink") to be transported to a "deep link" where the full article is reproduced. Readers can also comment on the story using *Newton TAB* Blog, and can review and reply to comments of others, thus fulfilling *Wicked Local*'s virtual Town Hall function.

20.     Upon information and belief, *Newton TAB*, *Newton TAB* Blog, *Daily News Tribune*, and *Wicked Local* have developed strong brand identities and/or secondary meaning in that they are associated with GateHouse and the independent and original local news content it provides in print and online.

21.     GateHouse earns revenue from *Wicked Local* principally through advertising, which is concentrated on the *Wicked Local* "home page." This placement ensures that users accessing *Wicked Local* are exposed to such advertising as they peruse the various headlines and ledes before deciding whether to delve more deeply into the web pages containing specific articles.

22.     Upon information and belief, many readers choose not to enter into the deep links, instead gathering news from the headlines and ledes published on the *Wicked Local* home page.

**B.     The Infringing Content and Functionality of http://www.boston.com/yourtown/ newton.**

23.     In or about early November 2008, defendant announced that its website http://www.boston.com, which, upon information and belief, previously functioned as the online edition of *The Boston Globe*, would soon roll out a hyper-local website in direct competition with *Wicked Local*, *i.e.*, would also furnish "hyper-local" news coverage in a virtual Town

Hall-type setting relative to some or all of the 162 Massachusetts communities then being served by *Wicked Local*.

24.     Upon information and belief, in a press release dated December 11, 2008, defendant described the new Boston.com endeavor as follows:

> Boston.com announced today the successful launch of a community Web site for the town of Newton, Massachusetts, part of a strategy to create a network of hyper-local sites for towns throughout greater Boston.   The new community sites will provide access to comprehensive news, information, local resources and local Web sites for individual towns, providing residents with a digital front door to their town.
>
> * * * *
>
> Discussion boards and blogs will also be an important feature of the Newton site and all future Boston.com community sites.

25.     Upon information and belief, defendants activated an "alpha" version of the Infringing Website on or about November 10, 2008, which was at that time fully populated with local content, including unauthorized copies of the original headlines and ledes of multiple articles published in the *Newton TAB*, on the *Newton TAB* blog, in the *Daily News Tribune* and/or *Wicked Local*, with a "deep link" directly to those stories which bypasses the *Wicked Local* home page.

26.     Upon information and belief, defendant launched a permanent ("beta") version of the Infringing Website on or about December 11, 2008.

27.     Over the next several weeks, and continuing to the present, defendant continued the infringement by populating http://boston.com/newton in any given day with anywhere from 10 – 30 of GateHouse's original headlines and ledes, which, upon information and belief, were manually or electronically "scraped" (*i.e.*, cut and copied) from *Wicked Local*, and/or the print editions of the Newspapers and re-posted verbatim to the Infringing Website without plaintiff's permission.

28.   The works published by GateHouse, copies of which are displayed by defendant on the Infringing Website, are subject to valid and subsisting copyright protection in the United States.  Those works may only be published, reproduced, distributed or displayed for commercial purposes by GateHouse, or pursuant to GateHouse's permission.

29.   GateHouse currently has pending before the United States Copyright Office applications for valid and subsisting copyright registrations for each and every original article prepared by GateHouse's staff which appeared in *Newton TAB* during the month of November, 2008.  Several of the headlines and ledes of these original articles have been "scraped" by defendant from *Wicked Local* without permission and copied verbatim to the Infringing Website. True and correct copies of the above-referenced compilation application and deposit materials are annexed hereto as Exhibit 1.

30.   GateHouse currently has pending before the United States Copyright Office applications for copyright registration for the following individual articles prepared by GateHouse's staff which appeared in *Newton TAB*, the headlines and ledes of which have been scraped by defendant from *Wicked Local* and copied verbatim to the Infringing Website without permission:

| Source (Date) | Article | Writer |
|---|---|---|
| Newton TAB (12/2/08) | *"Newton School Committee Delivers Budget Guidelines"* | S. Bagley |
| Newton TAB (12/3/08) | *" 'Office' Star Visits Children's"* | S. Bagley |
| Newton TAB (12/7/08) | *"Pop Singer Invites Group to Record with Him"* | E. Symkus |
| Newton TAB (12/9/08) | *"Locker Fire at Newton North High School Extends School Day"* | C. Long |
| Newton TAB (12/9/08) | *"Newton Students in Robot-Building Competition"* | S. Bagley |
| Newton TAB (12/10/08) | *"One Root Beer Spill Costs Newton Taxpayers $13,000"* | C. Long |

True and correct copies of the above-referenced application and deposit materials are annexed hereto as Exhibit 2.

31.     GateHouse currently has pending before the United States Copyright Office applications for copyright registration for the following individual articles prepared by GateHouse's staff which appeared in the *Daily News Tribune*, the headlines and ledes of which have been scraped by defendant from http://www.dailynewstribune.com and copied verbatim to the Infringing Website without permission:

| Source (Date) | Article | Writer |
|---|---|---|
| Daily News Tribune (11/19/08) | *"Rooney Steps Down As North Girls Soccer Coach"* | S. Jacquet |
| Daily News Tribune (11/25/08) | *"A THANKSGIVING TRADITION: Tigers Look To Make It Their Year In Ancient Rivalry"* | S. Jacquet |
| Daily News Tribune (11/26/08) | *"Boston College: Flutie, Davis Ready for New Roles"* | E. Avidon |
| Daily News Tribune (11/27/08) | *"Newton Can't Close Budget Gap, Says CAG"* | C. Long |
| Daily News Tribune (11/30/08) | *"Boston College: Credit to the Coaches"* | E. Avidon |
| Daily News Tribune (12/2/08) | *"2 for the Show: Newton Docs to Compete at 2008 Bay Colony Dog Show"* | J. Gilbride |

True and correct copies of the above-referenced application and deposit materials are included in Exhibit 2, *supra*.

32.     GateHouse currently has pending before the United States Copyright Office applications for copyright registration for the following individual articles prepared by GateHouse's staff which appeared on *Wicked Local*, the headlines and ledes of which have been scraped by defendant here and copied verbatim to the Infringing Website without permission:

| Source (Date) | Article | Writer |
|---|---|---|
| Wicked Local (11/26/08) | *"YMCA Presented with Non-Profit of the Year Award"* | G. Spector |
| Wicked Local (11/26/08) | *"South Girls Qualify for Nationals"* | S. Jacquet |

| Source (Date) | Article | Writer |
|---|---|---|
| Wicked Local (12/2/08) | *"Local Legislators Push Plan to Stop Toll Hikes"* | D. Riley |
| Wicked Local (12/2/08) | *"Students to be Disciplined for Painting Newton Park"* | C. Long |
| Wicked Local (12/2/08) | *"Newton Teachers and Students Embrace Technology in and out of Class"* | S. Bagley |
| Wicked Local (12/3/08) | *"Residents Pick Up Hotel Tab in Wake of Fire"* | C. Long |

True and correct copies of the above-referenced application and deposit materials are included in Exhibit 2, *supra.*

33.    GateHouse currently has pending before the United States Patent and Trademark Office (USPTO) applications to register the marks "Newton TAB" and "Daily News Tribune," which applications are pending under serial numbers 77/627486 (filed on December 5, 2008) and 77/633769 (filed on December 16, 2008), respectively. True and correct copies of printouts from the United States Patent and Trademark Applications and Registrations Retrieval (TARR) system providing filing details on the above-referenced trademark applications are annexed hereto as Exhibit 3.

34.    By assignment, GateHouse is the exclusive owner of the registered mark *Wicked Local* (USPTO registration number 3345458), which was duly accepted for registration on or about November 27, 2007, and which has been in continuous use in commerce since March, 15, 2006. A true and correct copy of the printout from the United States Patent and Trademark Applications and Registrations Retrieval (TARR) system providing registration details for the *Wicked Local* mark is annexed hereto as Exhibit 4.

35.    In addition, GateHouse holds common law rights in its daily and weekly newspaper titles and other elements of its publications, in light of its continuous and exclusive use of those marks in commerce and the public's recognition of those trademarks, logos, trade

dress and other elements as an indication of the source of the products and services associated with GateHouse and its publications.

**C.      The Infringing Website's Copying of GateHouse's Original Source Material.**

36.     The headlines and ledes from plaintiff's publications are displayed throughout the Infringing Website, accompanied at times by the inconspicuous parentheticals "(Newton Tab)," "(Newton Tab [date of publication])," or "wickedlocal," and juxtaposed against content from numerous other sources, including *The Boston Globe*, which creates the false impression that plaintiff has licensed, authorized or endorsed the Infringing Website's display and distribution of GateHouse's exclusive copyrighted and copyrightable content, and/or creates confusion as to the source of origin of the reportage appearing on the Infringing Website.

37.     A user viewing plaintiff's headlines and ledes on the Infringing Website can click a mouse pointer on the headline and be transported immediately to a deep link containing the *Newton TAB* or *Daily News Tribune* article, or blog entries from *Newton TAB* Blog, thus completely bypassing the *Wicked Local* home page and portal. The user receives no warning or notification that it has been transported to an unaffiliated third-party website, thus exacerbating the potential for confusion as to the source of origin of the reportage and information displayed on the Infringing Website.

38.     Defendant is responsible for the reproduction, transmission, display and distribution of the unauthorized versions of GateHouse's publications on the Infringing Website to users across the United States and beyond.

**D.      Plaintiff's Notice of Infringement to Defendant and Requests to Cease and Desist from Scraping GateHouse's Original Content.**

39.     Upon information and belief, within a few days of the Infringing Website going live on November 10, 2008, plaintiff learned of the website's existence. On November 19, 2008,

plaintiff sent a cease and desist letter to the Publisher of the *The Boston Globe* and its Vice President of Product Development, demanding that they remove all GateHouse copyrighted material and that the Infringing Website cease and desist the scraping practice that it apparently engaged in as the principal means of populating the Infringing Website.

40.     Plaintiff's cease and desist letter put the owners of the Infringing Website on notice that plaintiff believed that http://boston.com/yourtown/newton and its owners and operators were directly infringing plaintiff's copyrights and trademarks.

41.     Defendant replied on behalf of the Infringing Website by letter dated November 26, 2008, and refused to comply with GateHouse's request to cease and desist the scraping practice.

42.     Plaintiff reiterated its demand and replied to the assertions in defendant's November 26, 2008, letter by follow-up letter dated December 2, 2008.  Defendant failed to respond to this letter.

**E.      Boston.com Circumvents GateHouse's Security Measures to Continue Its Infringing Copying.**

43.     Lacking any cooperation from defendant, GateHouse implemented certain electronic security measures on *Wicked Local*, to prevent users with a certain Boston.com Internet Protocol ("IP") address from scraping content from GateHouse's website. Plaintiff's security measures did not deter defendant in the least — defendant posted original content to the Infringing Website the very next day after they were installed.

44.     Upon information and belief, defendant intentionally circumvented GateHouse's electronic security measures for the sole purpose of continuing its infringing conduct complained of in the cease and desist letters, and has since re-populated the Infringing Website with, *inter*

*alia,* plaintiff's original copyrighted and copyrightable content scraped from the *Newton TAB,* *Newton TAB* Blog, *Daily News Tribune* and/or www.wickedlocal.com.

## COUNT I
### (*For Direct Copyright Infringement, 17 U.S.C. 501, et seq.*)

45.     Plaintiff repeats and realleges paragraphs 1 through and including 44 set forth above as if the same were fully set forth herein.

46.     GateHouse's publications the *Newton TAB, Newton TAB* Blog, *Daily News Tribune* and their online editions contain material that is wholly copyrightable subject matter, alone or in combination, under the laws of the United States, and that material is owned by GateHouse, which holds or will hold copyright interests therein pursuant to 17 U.S.C. 404.

47.     Plaintiff has pending before the U.S. Copyright Office valid and subsisting applications for Certificates of Copyright Protection to plaintiff for numerous articles appearing in *Newton TAB* during November of 2008, the *Daily News Tribune,* and on http:www.wickedlocal.com/newton, as reflected in paragraphs "29" – "34," *supra.*   Those applications were filed within three months of publication of the respective articles under 17 U.S.C. 412 (2).

48.     Notwithstanding plaintiff's ownership of the original content published in the *Newton TAB, Newton TAB* Blog, and the *Daily News Tribune,* and their online counterparts, defendant has mined each of these sources for the purpose of reproducing, distributing, displaying and/or creating derivative works from, in whole or in part, plaintiff's original content without permission, license or authority, in violation of the copyright laws of the United States and the rights of plaintiff.  These acts constitute direct copyright infringement.

49.     Defendant had access to each issue of the *Newton TAB, Daily News Tribune,* www.wickedlocal.com/newton and *Newton TAB* Blog which it has uploaded in whole or in part

to the Infringing Website in a form identical to that in which they appear in or at the original source materials and for the identical purpose.

50.     Defendant knew or should have known of plaintiff's rights in and to the headlines and ledes, and has willfully and intentionally infringed the plaintiff's exclusive rights in the headlines and ledes under 17 U.S.C. 106, in violation of 17 U.S.C. 501.

51.     As a direct and proximate result of the copyright infringement detailed herein, plaintiff has been and continues to be damaged in an amount unknown at present and to be determined at trial, but in no event less than the jurisdictional limit of this Court, and defendant has garnered and/or will garner substantial infringing profits in an amount presently unknown, which profits should be disgorged to plaintiff.

52.     In the alternative and at their election, plaintiff is entitled to seek maximum statutory damages for each separate act of willful infringement by defendant.

53.     As a direct and proximate result of the copyright infringement detailed herein, plaintiff is entitled to preliminary and permanent injunctive relief enjoining and restraining defendants from infringing their copyrights.

54.     Plaintiff has no adequate remedy at law.

## COUNT II
### (Unfair Competition and False Designation of Origin, 15 U.S.C. 1125(a)(1))

55.     Plaintiff repeats and realleges paragraphs 1 through and including 54 set forth above as if the same were fully set forth herein.

56.     Plaintiff's claim arises under Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a)(1), for unfair competition, false designation of source of origin, and false endorsement.

57.     As above-stated, GateHouse owns all rights in and to the marks *Newton TAB*, *Newton TAB* Blog, *Daily News Tribune*, and *Wicked Local*, each of which is either arbitrary,

inherently distinctive or suggestive, and/or a mark in which GateHouse has acquired secondary meaning.

58.    The respective marks have been used by plaintiff continuously and extensively in commerce in the United States for several years, and, upon information and belief, have become synonymous with plaintiff and the local news content plaintiff provides as its core business model.  Plaintiff's mark *Daily News Tribune* has been in continuous use in the City of Waltham and environs for approximately 125 years.

59.    Through plaintiff's above-described use and their respective advertising, promotional, merchandising and licensing activities over several years, each of the marks has acquired secondary meaning such that consumers, upon hearing or seeing those marks, think of a particular origin or source of the publications sold under that name and those marks, as well as a particular focus, *i.e.*, local news coverage in the Cites of Newton and Waltham and environs.

60.    GateHouse has established extensive goodwill in the marks, which are uniquely associated with plaintiff in the minds of the general public.

61.    Defendant has used and continues to use altered versions of the marks on and/or in connection with their own services, *i.e.,* the Infringing Website, without license or authorization from plaintiff.

62.    Defendant's products and services are targeted to the exact same consumers as plaintiff targets its products and services, and the Infringing Website performs functions that are identical to those performed by *Wicked Local* and for which *Wicked Local* has come to be known, *i.e.*, hyper-local news content presented in a virtual Town Hall format.

63.    Defendant's advertising and promotion of the Infringing Website is intentionally designed to deceive, and has deceived, consumers and advertisers to believe that the products

and services offered by defendants on http://www.boston.com/yourtown/newton, including plaintiff's original content,  are authorized and licensed for use or otherwise approved by plaintiff.

64.     As a direct and proximate result of defendant's actions, the public is likely to be confused as to the origin and source of defendant's products and services and/or to believe that defendant is licensed, sponsored or otherwise authorized by plaintiff to offer those products and services, when they are not.

65.     Defendant's blatant and continuing use of plaintiff's marks, despite notifications of such infringing conduct, and its circumvention of plaintiff's security measures, constitutes willful and intentional trademark infringement and unfair competition.

66.     Defendant, upon information and belief, has earned or will earn profits as a direct result of its unauthorized use of the marks.

67.     As a direct and proximate result of the willful and wanton conduct of defendant, plaintiff has been injured and will continue to suffer harm in this District, the State of Massachusetts, and worldwide due to the pervasive reach of the Internet, in an amount unknown at present and to be determined at trial, but in no event less than the jurisdictional limits of this Court.

68.     As a direct and proximate result thereof, plaintiff is entitled to injunctive relief enjoining and restraining defendant from use of the marks.

69.     Plaintiff has no adequate remedy at law.

70.     The foregoing conduct, in particular defendant's intentional and blatant circumvention of plaintiff's security measures, renders this case exceptional under 15 U.S.C. 1117(a), entitling plaintiff to enhanced damages and an award of reasonable attorneys' fees.

## COUNT III
### *(False Advertising, 15 U.S.C. 1125(a)(2))*

71.    Plaintiff repeats and realleges paragraphs 1 through and including 70 set forth above as if the same were fully set forth herein.

72.    Plaintiff's claim arises under Section 43(a)(2) of the Lanham Act, 15 U.S.C. 1125(a)(2).

73.    Defendant has made material, false and misleading descriptions or misrepresentations of fact concerning the Infringing Website in commercial advertising and promotion for and on the Infringing Website itself, by giving the clear but false impression that (i) the Infringing Website is populated with defendant's original content; and/or (ii) plaintiff has licensed or otherwise authorized the owners and operators of the Infringing Website to reproduce, display, and distribute its original content first published in the *Newton TAB*, *Newton TAB* Blog, *Daily News Tribune*, or *Wicked Local*, and that plaintiff has licensed or endorsed the Infringing Website's use of their marks.

74.    Defendant's conduct is willful, deliberate, intentional and in bad faith.

75.    Defendant's false and misleading representations about the Infringing Website and plaintiff's role therein have deceived or are likely to deceive a substantial segment of the intended audience and to cause plaintiff actual injury.

76.    The Infringing Website and the advertising and promotion therefore are being displayed and distributed in interstate commerce.

77.    As a direct and proximate result of defendant's false and misleading representations, plaintiff has been damaged in an amount unknown at present and to be proved at trial, but in no event less than the jurisdictional limit of this Court.

78.     Plaintiff is entitled to treble damages based on the bad faith and willful conduct of defendant.

79.     Plaintiff has suffered and, unless defendant is enjoined, will likely continue to suffer irreparable injury by reason of the false and misleading claims made by defendant about the Infringing Website and plaintiff's role therein.

80.     Plaintiff has no adequate remedy at law.

81.     The foregoing conduct, in particular defendant's intentional and blatant circumvention of plaintiff's security measures, renders this case exceptional under 15 U.S.C. 1117(a), entitling plaintiff to enhanced damages and an award of reasonable attorneys' fees.

## COUNT IV
### *(Trademark Dilution, 15 U.S.C. 1125(c))*

82.     Plaintiff repeats and realleges paragraphs 1 through and including 81 set forth above as if the same were fully set forth herein.

83.     Plaintiff's claim arises under Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c).

84.     Plaintiff's marks qualify as "famous" marks as defined by 15 U.S.C. 1125(c)(1)(a) through (h).

85.     Defendant's above-described infringing uses of plaintiff's marks began after the marks had become famous.

86.     Upon information and belief, defendant's above-described infringing uses, including, but not limited to using plaintiff's marks in conjunction with defendant's mark, Boston.com, causes and/or is likely to cause dilution of the famous marks by blurring their distinctive nature.

87.     Defendant, upon information and belief, has earned or will earn profits as a direct result of its unauthorized use of plaintiff's famous marks.

88.     As a direct and proximate result of the willful and wanton conduct of defendant, plaintiff has been injured and will continue to suffer harm in this District, the State of Massachusetts, and worldwide due to the pervasive reach of the Internet, in an amount unknown at present and to be determined at trial, but in no event less than the jurisdictional limits of this Court.

89.     As a direct and proximate result thereof, plaintiff is entitled to injunctive relief enjoining and restraining defendants from use of its famous marks.

90.     Plaintiff has no adequate remedy at law.

91.     The foregoing conduct, in particular defendant's circumvention of plaintiff's security measures, renders this case exceptional under 15 U.S.C. 1117(a), entitling plaintiff to enhanced damages and an award of reasonable attorneys' fees.

## COUNT V
### *(Unfair Business Practices, Mass. Gen. Laws, ch. 93A, § 11)*

92.     Plaintiff repeats and realleges paragraphs 1 through and including 91 set forth above as if the same were fully set forth herein.

93.     Plaintiff's claim arises under Mass. Gen. Laws, ch. 93A, § 11.

94.     Defendant is engaged in the conduct of trade or commerce.

95.     As set forth hereinabove, plaintiff's marks *Newton TAB, Daily News Tribune* and *Wicked Local* are distinctive and/or have acquired secondary meaning and therefore qualify for protection under the law of the Commonwealth of Massachusetts.

96.     Defendant's above-described infringing uses of plaintiff's marks were willful, intentional predatory acts which began after each of the marks had become distinctive.

97.     Defendant's above-described infringing uses of plaintiff's marks are likely to cause confusion as to the source of origin of the materials displayed and distributed on the

Infringing Website, falsely suggest plaintiff's endorsement or sponsorship of the Infringing Website, and will cause actual dilution of plaintiff's distinctive marks by blurring.

98.   Defendant's above-described infringing uses of plaintiff's marks is immoral, unethical and in violation of all established concepts of fairness.

99.   As a direct and proximate result thereof, plaintiff is entitled to injunctive relief enjoining and restraining defendant's use of the marks.

100.   Plaintiff has no adequate remedy at law.

## COUNT VI
### (Trademark Infringement, Mass. Gen. Laws, ch. 110H, § 13)

101.   Plaintiff repeats and realleges paragraphs 1 through and including 99 set forth above as if the same were fully set forth herein.

102.   As set forth hereinabove, plaintiff's marks *Newton TAB, Daily News Tribune* and *Wicked Local* are entitled to protection pursuant to the law of the Commonwealth of Massachusetts in that they are inherently distinctive and/or have acquired secondary meaning.

103.   Defendant's infringing use of plaintiff's marks is likely to cause confusion or mistake or to deceive the public as to the source of origin of the goods and services offered on the Infringing Website, and has diluted, and if not enjoined, will continue to dilute, the distinctive qualify of plaintiff's marks valid under Massachusetts law.

104.   Plaintiff is entitled to injunctive relief under Mass. Gen. Laws, ch. 110H, § 13, enjoining and restraining defendant's infringing conduct.

105.   Plaintiff has no adequate remedy at law.

## COUNT VII
### (*Unfair Competition*)

106.  Plaintiff repeats and realleges paragraphs 1 through and including 104 set forth above as if the same were fully set forth herein.

107.  As set forth hereinabove, by the juxtaposition of plaintiff's goods and services with those of defendant in a manner likely to cause confusion and mistake as to source of origin, defendant is attempting to pass-off plaintiff's works as its own, in violation of the common law of the Commonwealth of Massachusetts.

108.  Plaintiff's mark *Daily News Tribune* has acquired secondary meaning, *i.e.*, it has come to be associated with GateHouse and its hyper-local content.

109.  As a "second-comer" to the hyper-local news service market being served by plaintiff, defendant had a duty to distinguish its goods and services from those of plaintiff to avoid confusion, which duty it has not fulfilled.

110.  Defendant has infringed upon plaintiff's marks in a manner likely to cause confusion and mistake as to source of origin, and defendant is attempting to pass-off plaintiff's works as its own, in violation of the common law of the Commonwealth of Massachusetts.

111.  As a direct and proximate result thereof, plaintiff is entitled to injunctive relief enjoining and restraining defendant's use of the marks.

112.  Plaintiff has no adequate remedy at law.

## COUNT VIII
### (*Breach of Contract*)

113.  Plaintiff repeats and realleges paragraphs 1 through and including 111 set forth above as if the same were fully set forth herein.

114.    Plaintiff's website *Wicked Local* contains a prominently placed disclaimer in the lower right-hand corner clearly stating that its "original content [is] available for noncommercial use under a Creative Commons license, except where noted." The disclaimer is accompanied by a graphic box, titled "Some rights reserved." Users who click their mouse pointer on the graphic box are immediately transported to the website http://creativecommons.org/licenses/by-nc-nd/3.0/, which displays a summary, both graphic and text, of the rights reserved by the copyright holders of the original content.

115.    Pursuant to the Creative Commons License, GateHouse grants to users of *Wicked Local* a qualified right to copy, transmit and distribute its copyrighted and copyrightable content, provided certain conditions are met which are expressly stated: (i) proper attribution (but not in a way which suggests that the copyright holder endorses the secondary user or its use of the work); (ii) noncommercial use, *i.e.*, a complete bar against using the copyrighted work for commercial purposes; (iii) no derivative works, *i.e.*, a complete bar against altering or building upon the copyrighted work; and (iv) for any permissible reuse or redistribution, the user must make clear to others the license terms of the copyrighted work.

116.    Users who review the above summary of the Creative Commons license have the option of reviewing the full text of the applicable Creative Commons license, thus further informing themselves of the terms and conditions governing their use of plaintiff's copyrighted material.

117.    Upon information and belief, at all pertinent times defendant had actual or constructive knowledge of the presence, terms and conditions of plaintiff's prominently displayed browsewrap agreement.

118.    Users of plaintiff's website *Wicked Local*, including defendant here, agree to be bound by the above Creative Commons license whenever they distribute or display original content posted by plaintiff on http://www.wickedlocal.com/newton.

119.    Upon information and belief, users who disagree with or refuse to be bound by the Creative Commons License displayed on *Wicked Local* are free to obtain their local news coverage from other sources, to the extent available.

120.    Defendant's above-described use of GateHouse's copyrighted and copyrightable material constitutes a breach of the above contract conditions to the extent that its infringing use: (i) fails to give proper, clear and unambiguous attribution to plaintiff; (ii) clearly qualifies as a competing, commercial use of the copyrighted and copyrightable content posted on http://www.wickedlocal.com/newton; (iii) makes attempts to alter plaintiff's copyrighted works by displaying just the headlines and ledes; and (iv) is not accompanied by the Creative Commons License or any reference thereto.

121.    As a direct and proximate result of defendant's breach of contract detailed herein, plaintiff has been and continues to be damaged, in an amount unknown at present but in no event less than the jurisdictional limit of this Court.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**WHEREFORE**, plaintiff respectfully demands:

(a)     a preliminary and permanent injunction enjoining and restraining defendants from (1) reproducing, uploading, posting, displaying, or distributing plaintiff's copyrighted content; and (2) using plaintiff's trade names *"Newton TAB"* and/or *"Newton TAB* Blog" and/or *"Daily News Tribune"* and/or *"Wicked Local"* in a manner that falsely states or implies that plaintiff has authorized, licensed or endorsed defendant, its Infringing Website and/or its complained of actions and/or which confuses the public as to the

source or origin of the materials posted at http://www.boston.com/yourtown/newton;

(b)   compensatory damages in an amount to be determined after the trial of this matter;

(c)   disgorgement of defendant's profits earned from its infringement and the trademark confusion caused thereby;

(d)   double or treble damages to the extent authorized by law;

(e)   punitive damages to the extent authorized by law;

(f)   an award of attorneys' fees and costs in this action; and

(g)   such other and further relief as to the Court seems just and proper.

**DATED:**        December 22 2008          **HISCOCK & BARCLAY, LLP**

By:    _Anthony A. Scibelli_

Anthony A. Scibelli
(BBO# 556507)

Carolyn A. Marcotte
(BBO# 663616)

Michael J. Grygiel
(Application for admission
*pro hac vice* pending)

William A. Hurst
(Application for admission
*pro hac vice* pending)

Vincent M. Chen
(Application for admission
*pro hac vice* pending)

*Attorneys for plaintiff*
GATEHOUSE MEDIA MASSACHUSETTS I, INC., DOING BUSINESS AS GATEHOUSE MEDIA NEW ENGLAND

Office and Post Office Address
50 Federal Street – 5th Floor
Boston, Massachusetts 02110-2509
(617) 274-2900