Gatehouse Media Massachusetts I, Inc. v. The New York Times Co. Doc. 38

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

GATEHOUSE MEDIA MASSACHUSETTS I, INC., DOING BUSINESS AS GATEHOUSE MEDIA NEW ENGLAND,

Plaintiff,

v.

THE NEW YORK TIMES COMPANY, DOING BUSINESS AS BOSTON.COM,

Defendant.

Civil Action No. 08-12114-WGY

**THE NEW YORK TIMES COMPANY'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO**
**EXCLUDE THE EXPERT TESTIMONY OF PROFESSOR DAVID M. RUBIN**

Defendant The New York Times Company ("New York Times") moves to exclude the trial testimony of Plaintiff's proffered expert, Professor David M. Rubin. Professor Rubin professes to be an expert in "judging the merits of journalistic performance," and claims that he is "well qualified to offer the views set forth below on the standard practices of the news industry with respect to writing news headlines and ledes." Expert Report of Professor David M. Rubin (the "Report"), Exhibit 1, at 4. Professor Rubin's anticipated testimony, as set forth in his Report, largely consists of unhelpful and inadmissible legal conclusions, and is otherwise ungrounded in any area in which Professor Rubin professes to be an expert. The area of expertise disclosed on page 4 of the Report has no bearing on the vast number of opinions set forth throughout the Report, and Professor Rubin's anticipated testimony should be excluded from trial.

Dockets.Justia.com

## ARGUMENT

### I. PROFESSOR RUBIN'S EXPECTED TESTIMONY LARGELY CONSISTS OF LEGAL CONCLUSIONS THAT ARE UNHELPFUL AND INADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 702.

At several points throughout his Report, Professor Rubin simply makes conclusions of law which, for the reasons set forth in the accompanying Motion In Limine to Exclude the Expert Testimony of Law Professor Douglas Gary Lichtman, are impermissible and unhelpful under Federal Rule of Evidence 702 ("Rule 702") and well-established law of this Circuit and District. Indeed, many of the opinions proffered by Professor Rubin amount to little more than expressions of his own personal understanding of copyright law—a subject that has nothing to do with "judging the merits of journalistic performance," his professed area of expertise, and has everything to do with usurping the role of this Court.

For example, on page 5 of his Report, Professor Rubin describes a hypothetical car accident in Newton, Massachusetts, and envisions the manner in which such an accident would be covered by the press. In so doing, Professor Rubin declares that "[t]he ***facts*** of this accident are not subject to copyright protection. They are available to all." Report at 5. Whether this fairly uncontroversial position regarding copyright protection is correct or not is immaterial to the larger problem with its inclusion in his expected testimony, namely, that these sentences are legal positions, asserted by Professor Rubin based upon his understanding of the copyright laws.

As such, they are not "evidence" or statements meant to clarify or explain a fact or facts at issue in this case, but rather are meant to put forth a legal conclusion for the Court's consideration. *See Northern Heel Corp. v. Compo Indus.*, 851 F.2d 456, 468–69 (1st Cir. 1988). Similarly, on page 9 of the Report, Professor Rubin, in analyzing the facts presented to him, declares that "[i]f the *New York Post* were suddenly to appropriate *New York Times* headlines and ledes in large numbers and substitute them for its own, not only would this be an unethical

and illegal appropriation of each individual headline and lede, it would also amount to usurping the very editorial identity of the *Times*." (emphasis added). Again, the statement is put forth not to elucidate any fact at issue, but simply to offer Professor Rubin's own understanding of what constitutes "illegal" copying under the Copyright Act.

Such "expert" testimony concerning legal conclusions is immaterial and unhelpful. Interpretation of the Copyright Act, and determination of what acts are legal and illegal under it, are the sole province of the Court in this jury-waived case. *See Northern Heel Corp.*, 851 F.2d at 468–469; *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100–101 (1st Cir. 1997); *Pelletier v. Main St. Textiles, LP*, 470 F.3d 48, 54–55 (1st Cir. 2006); *Ji v. Bose Corp.*, 538 F. Supp. 2d 354, 359–360 (D. Mass. 2008). Professor Rubin's report is replete with legal statements and conclusions that portent to instruct the Court on how to rule and resolve the facts at issue in this case. *See* Report at 10 ("In taking and displaying the collection of headlines and ledes in this manner, boston.com/yourtown/Newton is not only misappropriating the headlines and ledes of the wickedlocal site, it is also misappropriating the editorial tone of the wickedlocal site as well as the editorial decision-making that went into creating it."); *see also* Report at 12 ("Boston.com/yourtown/Newton cannot appropriate the exact headlines and ledes as they are written by GateHouse employees without permission."). The question of whether Boston.com has "misappropriated" the headlines and ledes of GateHouse is a legal issue, and Professor Rubin's conclusion that Boston.com has engaged in misappropriation is itself a legal conclusion that is unhelpful to the Court and thus deserving of exclusion.

## II. PROFESSOR RUBIN IS NOT QUALIFIED AS AN EXPERT IN AN AREA RELEVANT TO HIS ANALYSIS.

In advance of admitting an expert witness' testimony, this Court must first review the proffered qualifications of the "expert" and determine whether the witness actually satisfies the

requirements for expertise and reliability established under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993). *See, e.g. Beaudette v. Louisville Ladder, Inc.*, 462 F.3d 22, 25-26 (1st Cir. 2006) (reviewing the standard for expert admissibility under Rule 702 and *Daubert*). While Rule 702 allows a qualified witness to testify in the form of an opinion at trial if the "scientific, technical, or other specialized knowledge will assist the trier of fact," before being permitted to do so, a proffered expert like Professor Rubin must first establish that his qualifications and methodology provide the basis for reliable opinions. *Id*. Professor Rubin has failed to do so here.

### A. Professor Rubin is not qualified to testify to Boston.com's alleged harms to GateHouse.

The trial judge must ensure that a proffered expert witness is properly qualified as to the specific areas for which he expects to offer an opinion. *See Beaudette*, 462 F.3d at 25-26. The district court must determine whether the expert witness is qualified and has specialized knowledge that will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

Given Professor Rubin's background of more than 37 years teaching journalism and mass communications courses to students at New York University and Syracuse University, Professor Rubin may be qualified to testify to the practice of journalists. Report at 3. However, Professor Rubin has no experience in the newspaper industry as a business, nor does he cite to or rely upon any relevant print or online business experience. Professor Rubin explains his qualifications for testifying in this case by noting that, "[i]n short, I am very experienced in judging the merits of journalistic performance, and submit that I am well qualified to offer the views set forth below on the standard practices of the news industry with respect to writing news headlines and ledes." Report at 4. Professor Rubin offers no other basis for or area of expertise in his Report.

These qualifications, such as they are, have nothing to do with his expected testimony as set forth in Professor Rubin's Report. Professor Rubin has not submitted that he is an expert on the newspaper industry, on the Internet, on Boston.com's business model, or on GateHouse's business model, nor, given his experience, could he reasonably be expected to do so. Yet, in numerous sections of his report, Professor Rubin offers opinions and draws conclusions regarding the alleged harm New York Times has inflicted upon GateHouse through its business practices.

For example, Professor Rubin states that, "given that busy readers may never get beyond the headline and the lede (either because they are not interested in the story, or they have learned all they wanted to know from just the headline and lede), readers may never access the deep link that Boston.com provides to the individual GateHouse article." *Id.* Professor Rubin is not qualified as an expert on the activities of internet consumers, nor does he cite or rely upon any document or data to support his assertion. Rather, Professor Rubin merely speculates as a lay person on what the result of Boston.com's linking practice may be.

Similarly, Professor Rubin goes on to state that, "GateHouse would not profit as it should from its efforts in reporting the Newton traffic accident example discussed above because the audience would not see its story on its home page, surrounded by its advertisers' messages." Report at 9. Again, Professor Rubin has not established, or even attempted to establish, that he is an expert in the news or online news business, and he does not have any specialized skill, knowledge, or experience in how news websites make a profit or on the habits of online consumers of news. Such expert testimony falls well outside of the narrow area of self-professed expertise on the "standard practices of the news industry with respect to writing news headlines and ledes," and is thus unsupported, unreliable, and inadmissible. Report at 4.

Professor Rubin also provides analysis of GateHouse's business competition with Boston.com:

> Boston.com fills its own yourtown websites with local news content, produced by its competitor, and uses that "lifted" content to compete with GateHouse for the same readers, for the same advertising dollars, and for prominence in the same local news market. In doing so, it reduces the potential audience of its competitor. It has created a "news" product without the considerable associated costs of actually hiring journalists to produce it. This puts The New York Times Company at a considerable competitive economic advantage over GateHouse, which *has* invested in journalists and must recoup those costs.

Report at 10. Professor Rubin's own experience as a writer and professor of journalism for 37 years is insufficient to qualify him as an expert having any specialized knowledge, skill or experience in the business of internet news aggregation and websites. Professor Rubin does not have a background in running a newspaper business, nor does he have any special knowledge of internet based news production or advertising. Professor Rubin's testimony should be excluded because, as his own report establishes, he is not qualified as an expert in the areas of testimony described above.

### B. Professor Rubin provides no methodology for reaching his conclusions.

In any event, even if Professor Rubin did have the requisite training, education, or experience, his Report is utterly lacking in any discussion of reliable methodology to underlie his conclusions. In *Daubert*, the Supreme Court held that determining the admissibility of expert scientific testimony "entails an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts." 595 U.S. at 592–93. The Supreme Court in *Kumho Tire Co. v. Carmichael* clarified that this assessment of the expert's underlying reasoning and methods applies to all experts, not just experts based in science. 526 U.S. 137, 149 (1999). The party submitting an expert witness must show that (1) the testimony is based upon sufficient facts or data, (2) the

testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. *See* Fed. R. Evid. 702. While concerns regarding confusing and unreliable testimony may be somewhat less urgent in a bench trial, the *Daubert* standards of relevance and reliability must nevertheless still be met. *See Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1302 (Fed. Cir. 2002).

Professor Rubin reaches all of his conclusions by relying upon his experience as a writer and professor of journalism for 37 years, and little else. Professor Rubin offers specific conclusions regarding internet business models in general and the parties' models in particular. Professor Rubin decries Boston.com's practice of linking to GateHoutse's website, by declaring that "[t]he audience may have no idea that GateHouse created the story, and not Boston.com." Report at 9. Professor Rubin goes onto state that, "[t]his behavior threatens the business model and the distinctive editorial tone developed by GateHouse. It ultimately threatens the ability of GateHouse to pay for a trained staff of professional journalists." Report at 12.

Professor Rubin offers no basis or methodology for his conclusions, cites to no documentation or data, and simply speculates that Boston.com's business practices harm GateHouse. He does not for example, cite to any data from the Boston.com or WickedLocal.com websites (such as visitor traffic, page views, or even advertising revenue), nor does he explain how he reaches his conclusions. Professor Rubin fails to provide any way by which to determine whether his expected testimony is the product of reliable principles and methods, or even that he has reliably applied those principles and methods to the facts of the case. While an expert may testify solely on the basis of his experience, he "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory

committee's note; *see also McGovern v. Brigham & Women's Hosp.*, 584 F. Supp. 2d 418, 426 (D. Mass. 2008). Professor Rubin does not explain how his experience as a journalism professor leads him to any of the conclusions he reaches regarding the internet business models of the parties, or the online behavior of consumers, and thus any expected testimony on that subject should be excluded because it would amount to opinion without reliance on any testable method.

**CONCLUSION**

For the foregoing reasons, Defendant New York Times respectfully requests that this Court exclude the expected trial testimony of Professor David M. Rubin in its entirety.

Dated: January 23, 2009

Respectfully submitted,

THE NEW YORK TIMES CO.,

By its attorneys,

/s/ R. David Hosp
R. David Hosp (BBO # 634091)
Mark S. Puzella (BBO # 644850)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: (617) 570-1000
Fax: (617) 523-1231
rhosp@goodwinprocter.com
mpuzella@goodwinprocter.com

*and*

Parker Bagley (*pro hac vice*)
Ira J. Levy (*pro hac vice*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
Tel.: (212) 813-8800
Fax: (212) 355-3333
pbagley@goodwinprocter.com
ilevy@goodwinprocter.com

**CERTIFICATE OF SERVICE**

I, Ira J. Levy, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 23, 2009.

/s/ Ira J. Levy